

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00231-CR

_____

ROBERSON OCCIL, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 16th District Court
Denton County, Texas
Trial Court No. F22-1614-16

---

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

**MEMORANDUM OPINION**

Appellant Roberson Occil appeals his conviction for intoxication assault (Count 1) and accident involving serious bodily injury (Count 2). *See* Tex. Penal Code Ann. § 49.07; Tex. Transp. Code Ann. § 550.021.[1] In four points, he argues (1) the trial court erred by denying his pretrial motion to suppress his statements to the police; (2) the trial court erred by allowing the State's forensic expert to testify as to the result of his blood draw; (3) the jury charge was erroneous because it failed to include complete statutory language; and (4) the evidence was insufficient to support his conviction for Count 2. We affirm.

## I. Background

On New Year's Day, Occil caused what witnesses described as a "severe," "horrific" car accident when he ran a red light and struck Alexis Ramirez's van as Ramirez was driving through an intersection. The vehicles began spinning on impact before stopping hundreds of feet away, and Ramirez was ejected from his vehicle. Occil then "staggered" out of his vehicle and began walking or running away from the accident.

---

[1] Reviewing courts, including this one, routinely refer to the offense under Section 550.021—accident involving serious bodily injury—as "failure to stop and render aid." *Huffman v. State*, 267 S.W.3d 902, 904 (Tex. Crim. App. 2008) (superseded by statute on other grounds); *Mabry v. State*, Nos. 02-13-00066-CR, 02-13-00067-CR, 2014 WL 4463117, at *1 n.2 (Tex. App.—Fort Worth Sept. 11, 2014, pet. ref'd) (mem. op., not designated for publication).

Officer Marcus Coulter—who, moments before the accident, had unsuccessfully attempted to pursue Occil's vehicle[2] for speeding and driving erratically—drove up within minutes of the accident. When he got out of his patrol vehicle, Officer Coulter saw that Occil's vehicle was on fire but that Occil was not inside the vehicle. A witness at the scene pointed Officer Coulter in the direction that Occil had gone, and at that point, Occil was walking through a parking lot approximately two to three hundred feet away from the accident scene. Officer Coulter called out for Occil to stop, but he did not comply; instead, he kept walking away. Officer Coulter then "chase[d] after" Occil, and when he caught up to him, he detained him and walked him back to the scene of the accident.

When Officer Coulter detained Occil, he smelled the odor of alcohol on him. Officer Coulter asked Occil how much he had had to drink and why he had run from the scene. Occil initially stated that he had not had anything to drink, that he had not been running, and that he did not know what was going on. When prompted again by Officer Coulter, Occil admitted that he had had two to three drinks. At that point, Officer Coulter believed he had probable cause to arrest Occil for intoxication assault.

Emergency fire and medical personnel then arrived on scene and began treating Occil and Ramirez for their injuries. Ramirez was transported to the hospital in an

---

[2]Officer Coulter decided to terminate the pursuit for public-safety reasons after Occil ran a red light at a different intersection. Officer Coulter then lost visual of Occil's vehicle. At the time of the pursuit, Officer Coulter did not yet know Occil's identity.

3

ambulance. He sustained serious injuries, including lacerations on his head and waist, bruising, scarring, abrasions on his chest, a broken arm, a severed peripheral nerve, a brain injury, fractured ribs, and a concussion. He required surgery and ended up staying in the hospital for two weeks, and he subsequently suffered from memory issues and temporary paralysis.

Occil was also transported to the hospital in an ambulance, though he was in police custody and was handcuffed to his hospital bed. He complained of head, neck, and back pain, and he had lacerations above his forehead. A toxicology screening indicated that Occil had alcohol in his system. Occil consented to have his blood drawn, and a nurse took a sample of his blood.

Occil was charged with intoxication assault (Count 1), accident involving serious bodily injury (Count 2), and evading arrest (Count 3). Before his trial, he filed a motion to suppress the statements he made to Officer Coulter at the scene of the accident, arguing that the statements had been made during a custodial interrogation and that he had not been given his *Miranda*[3] warnings. The trial court heard the motion and denied it, and Officer Coulter subsequently testified to the statements at trial.

The State also offered expert testimony from a forensic analyst regarding the results of Occil's blood draw. Occil raised a Confrontation Clause objection to the expert's testimony because a different forensic analyst had tested Occil's blood and

---

[3]*Miranda v. Arizona*, 384 U.S. 436, 479, 86 S. Ct. 1602, 1630 (1966).

analyzed the results but was not providing the testimony. After a hearing outside the presence of the jury, the trial court overruled the objection and allowed the State's expert to testify about the blood evidence. Occil's blood–alcohol concentration (BAC) at the time of the legal blood draw was 0.130.

The jury found Occil guilty on Counts 1 and 2 but acquitted him on Count 3. It assessed his punishment at eight years' confinement, and the trial court rendered its judgment accordingly. Occil timely appealed.

## II. Motion to Suppress

In his first point, Occil argues that the trial court erred by denying his motion to suppress the statements he made during what he asserts was a custodial interrogation without having been given his *Miranda* warnings. Specifically, he contends that the trial court erred by admitting his statements—e.g., his statement that he had had two to three drinks—to Officer Coulter at the scene of the accident. We conclude that even if the trial court erred by admitting the complained-of statements, any alleged error was harmless.

### A. Standard of Review

The admission of incriminating statements made during a custodial interrogation in which no proper *Miranda* warnings were given constitutes constitutional error. *See Akins v. State*, 202 S.W.3d 879, 891–92 (Tex. App.—Fort Worth 2006, pet. ref'd). Because the error is constitutional, Rule 44.2(a) requires us to reverse the conviction unless we determine beyond a reasonable doubt that the trial

5

court's admission of the statements did not contribute to the conviction. *See* Tex. R. App. P. 44.2(a); *Wells v. State*, 611 S.W.3d 396, 410 (Tex. Crim. App. 2020). "If there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error was not harmless beyond a reasonable doubt." *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000); *see Neal v. State*, 256 S.W.3d 264, 284 (Tex. Crim. App. 2008).

Our harmless-error analysis does not focus on the propriety of the trial's outcome but rather on whether the constitutional error adversely affected the integrity of the process leading to the conviction. *See Wells*, 611 S.W.3d at 410; *see also Wesbrook*, 29 S.W.3d at 119 ("[T]he appellate court should calculate as much as possible the probable impact of the error on the jury in light of the existence of other evidence."). To that end, we consider "any and every circumstance apparent in the record that logically informs an appellate determination whether 'beyond a reasonable doubt [that particular error] did not contribute to the conviction or punishment.'" *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011) (quoting Tex. R. App. P. 44.2(a)). We evaluate the entire record in a neutral manner and not in the light most favorable to the prosecution. *Wells*, 611 S.W.3d at 410–11.

While the most significant concern must be the error and its effects, the presence of overwhelming evidence supporting the finding in question can be a factor in the evaluation of harmless error. *Id.* at 410. Other factors to consider may include, if applicable, the nature of the error, the extent that the State emphasized it, its

probable collateral implications, and how a juror would likely have weighed it "in the course of [jury] deliberations." *Id.*

**B. Analysis**

The trial court's error, if any, in admitting Occil's statements was harmless. In its closing argument, the State mentioned but did not emphasize the complained-of statements, instead focusing on other evidence showing that Occil was intoxicated at the time of the car accident. Indeed, the State offered overwhelming evidence of Occil's intoxication without the complained-of statements:

- Before he hit Ramirez's van, Occil had been speeding down the highway, weaving in and out of traffic, and disregarding traffic lights, and he "sped up" when Officer Coulter attempted to pursue him;

- When Officer Coulter arrived on the scene of the accident, he saw Occil walking away from the scene—indicating his guilt—and Officer Coulter had to "chase after him";

- Officer Coulter smelled the odor of alcohol on Occil;

- Other witnesses smelled alcohol on Occil and saw him "stagger[ing] outside [his] vehicle";

- At the hospital, Occil was given a bedpan to relieve his bladder, but instead of using it, he stood up from his hospital bed, pulled out his penis, and urinated on the bed—behavior that Officer Coulter testified was consistent with intoxication;

- Occil's medical records indicated that he had been treated for "[a]lcohol abuse with intoxication" and that his toxicology screening was positive for alcohol;

- Occil's blood was drawn and tested twice and his BAC was above 0.08—the legal limit for intoxication, *see* Tex. Penal Code Ann. § 49.01(2)(B)—for both;

- Occil's BAC was 0.130 at the time of the legal blood draw;

7

- Tempest Brooks, a forensic analyst for the crime lab, testified that a person with a BAC of 0.130 would be intoxicated;

- Ramirez testified that he later saw Occil and asked him if he had been drunk at the time of the car accident, and Occil responded by "nodd[ing] his head" and saying that "since that day, [he had] stopped drinking"; and

- Occil cried to Ramirez and told him that he was sorry.

In light of all this other evidence of Occil's intoxication, the probable impact of Occil's statements that he had been drinking was minimal. *See Wilkins v. State*, No. 02-19-00324-CR, 2021 WL 278311, at *6 (Tex. App.—Fort Worth Jan. 28, 2021, no pet.) (mem. op., not designated for publication) (reaching similar conclusion in appeal from felony DWI conviction).

After carefully reviewing the record and performing Rule 44.2(a)'s required harm analysis, we hold beyond a reasonable doubt that the trial court's alleged error did not contribute to Occil's conviction. *See* Tex. R. App. P. 44.2(a). Accordingly, we overrule his first point.

### III. Expert Testimony

In his second point, Occil argues that the trial court erred by allowing the State's forensic expert, Brooks, to testify about the blood–alcohol results because she was not the original forensic analyst who had tested his blood and signed the lab report. According to Occil, the testimony violated the Confrontation Clause because the original forensic analyst was not "unavailable." We disagree.

### A. Standard of Review

While we typically review a trial court's decision to admit or exclude evidence for an abuse of discretion, *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018), we review a trial court's ruling on a Confrontation Clause objection de novo. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006); *Kelley v. State*, No. 02-23-00296-CR, 2024 WL 3196072, at *3 (Tex. App.—Fort Worth June 27, 2024, no pet.) (mem. op., not designated for publication).

### B. Applicable Law

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Out-of-court testimonial statements made by a witness who does not appear at trial are therefore inadmissible unless the witness is unavailable and the defendant had a prior opportunity to cross-examine him. *Crawford v. Washington*, 541 U.S. 36, 53–54, 124 S. Ct. 1354, 1365 (2004); *see* U.S. Const. amend. VI.

Forensic lab reports are testimonial; thus, the admission of a forensic lab report created solely by a non-testifying forensic analyst is inadmissible under the Confrontation Clause. *Bullcoming v. New Mexico*, 564 U.S. 647, 652, 131 S. Ct. 2705, 2710 (2011); *Paredes v. State*, 462 S.W.3d 510, 517 (Tex. Crim. App. 2015). A testifying expert cannot merely explain a non-testifying forensic analyst's report when the expert has no personal knowledge of how the testing was conducted, even if she may be familiar with how the analysis is customarily performed. *Paredes*, 462 S.W.3d at 517. The testifying expert can, however, provide testimony based on an analysis performed solely by a non-testifying forensic analyst if she independently analyzes the data generated by the non-testifying forensic analyst and develops her own opinions and conclusions. *Id.* at 517–18. While the lab report created by the non-testifying forensic analyst cannot be offered into evidence, the testifying expert can provide her independent opinions and conclusions from the data. *Id.* In other words, the testifying expert can rely on information from a non-testifying forensic analyst, but she "cannot act as a surrogate to introduce that information." *Id.*

## C. Analysis

Brooks provided testimony about forensic blood testing and Occil's BAC at the time of his blood draw. In a hearing outside the presence of the jury, Brooks testified that as a forensic analyst, she performed blood tests and conducted technical reviews of blood testing done by other forensic analysts. As a technical reviewer, Brooks reviewed the data produced by the blood testing to ensure the accuracy of the

10

report. She clarified that in her technical reviews, her conclusions were based not on the opinions of the forensic analyst who had done the testing but on her own independent review of the raw data. She described the process as a "peer review" to ensure that the original forensic analyst had not "missed anything."

In this case, Brooks had been the technical reviewer and another forensic analyst at the crime lab, Matthew Myers, had performed the blood test.[4] Brooks testified that she had performed an independent review of the raw data produced by Myers's testing and had come to her own conclusions, which she explained would be the basis of her expert testimony. She further explained that, in reaching her individual conclusions, she had not relied on anything that Myers wrote in his lab report but had relied on the data generated by his testing to independently calculate Occil's BAC.

The trial court overruled Occil's Confrontation Clause objection and allowed Brooks's testimony. When the jury returned, Brooks testified generally about the process for testing blood to determine its alcohol concentration. She then described her role in this case and how it differed from Myers's role. Myers's lab report was not offered or admitted into evidence, and Brooks did not testify about any of his conclusions. She testified that she had formed her own conclusions by independently reviewing the raw data from his testing. She then testified that she had used that raw data to calculate Occil's BAC and that, according to her calculations, his BAC was

_____

[4]At the time of trial, Myers was out of the country.

11

0.130 at the time of the blood draw. Brooks explained to the jury how she had calculated that BAC, and as she went through her calculations, she wrote the numbers and equations on a piece of paper for the jury to follow along.

Brooks did not sponsor Myers's lab report or act as a surrogate for Myers. Rather, Brooks provided her own opinion regarding the blood–alcohol results based on her independent review of the raw data from Myers's testing. Accordingly, we hold that the admission of Brooks's testimony did not violate Occil's confrontation rights. *See id.* at 519 (concluding that expert's testimony did not violate Confrontation Clause because expert "did not introduce or testify regarding a formal report or assertion from a non-testifying analyst"); *Gourley v. State*, 710 S.W.3d 368, 378 (Tex. App.—Fort Worth 2025, pet. ref'd) (upholding admission of expert testimony from forensic toxicologist who had formed his conclusions on presence of drugs in appellant's blood by independently reviewing raw data from blood testing done by non-testifying toxicologist); *Downing v. State*, No. 02-19-00385-CR, 2020 WL 5833631, at *3 (Tex. App.—Fort Worth Oct. 1, 2020, no pet.) (mem. op., not designated for publication) (holding that admission of expert's BAC testimony did not violate appellant's confrontation rights because expert "was not a mere conduit or surrogate" for forensic scientist who performed blood testing but had independently reviewed raw data from that testing). We overrule Occil's second point.

## IV. Count 2 Evidence and Jury Charge

Occil's third and fourth points relate to his conviction on Count 2—accident involving serious bodily injury. *See* Tex. Transp. Code Ann. § 550.021. Under Count 2, the State alleged that Occil had failed to immediately return to the scene of the accident, *see id.* § 550.021(a)(2), and had failed to remain at the scene of the accident until he gave his information and provided reasonable assistance to Ramirez, *see id.* § 550.021(a)(4).[5] The jury found Occil guilty and entered a general verdict of guilty on Count 2.

In his fourth point, Occil argues that the evidence is insufficient to support his Count 2 conviction under either Section 550.021(a)(2) or (a)(4). In his third point, he argues that the trial court's jury charge was erroneous because it failed to include the complete statutory language of Section 550.021(a)(2), and the unobjected-to error resulted in egregious harm. Because the resolution of these points is interrelated, we address them together, and we overrule both points.

## A. Accident Involving Serious Bodily Injury

At the time of the offense, Section 550.021 provided, in relevant part,

(a) [t]he operator of a vehicle involved in an accident that results or is reasonably likely to result in injury to or death of a person shall:

. . . .

---

[5]The indictment against Occil also included an allegation under Section 550.021(a)(1), but the State abandoned that allegation at trial and moved forward only on Subsections (a)(2) and (a)(4).

> (2) immediately return to the scene of the accident if the vehicle is not stopped at the scene of the accident; [and]
>
> . . . .
>
> (4) remain at the scene of the accident until the operator complies with the requirements of Section 550.023.

*Id.* § 550.021(a). The requirements referenced in Subsection (a)(4) included,

> [t]he operator of a vehicle involved in an accident . . . shall:
>
> (1) give the operator's name and address, the registration number of the vehicle the operator was driving, and the name of the operator's motor vehicle liability insurer to any person injured or the operator or occupant of or person attending a vehicle involved in the collision; [and]
>
> . . . .
>
> (3) provide any person injured in the accident reasonable assistance, including transporting or making arrangements for transporting the person to a physician or hospital for medical treatment if it is apparent that treatment is necessary, or if the injured person requests the transportation.

*Id.* § 550.023.[6]

> In the jury charge, the application paragraph on Count 2 alleged that Occil
>
> operate[d] a vehicle involved in an accident that resulted in serious bodily injury or was likely to result in serious bodily injury, [Occil] knew he was involved in an accident, and [Occil] intentionally or knowingly failed to immediately return to the scene of the accident, or failed to remain at the scene of the accident until [Occil] had given his name, address, the registration number of the vehicle he was driving, or the name of his motor vehicle liability insurer to . . . Ramirez . . . , or failed

---

[6]The legislature subsequently amended Sections 550.021 and 550.023 by replacing "accident" with "collision" throughout. *See* Tex. Transp. Code Ann. §§ 550.021, 550.023, *amended by* Act of May 24, 2023, 88th Leg., R.S., ch. 709 §§ 45, 48, 2023 Tex. Gen. Laws 1703, 1713, 1714 (effective Sept. 1, 2023).

to remain at the scene of the accident until [Occil] had provided reasonable assistance to . . . Ramirez . . . as charged in the indictment.[7]

## B. Evidence Sufficient Under Section 550.021(a)(4)

Subsections (a)(2) (failing to return) and (a)(4) (failing to remain) are "alternate methods" of committing the offense of accident involving serious bodily injury. *Huffman*, 267 S.W.3d at 909; *see Leming v. State*, 493 S.W.3d 552, 559 (Tex. Crim. App. 2016) (noting that Section 550.021(a) "embodies multiple statutory requirements"—to "stop," "return," and "remain"—and that a defendant "could be convicted for failing to comply with any one of them"). Occil was charged with both, and we will affirm his conviction on Count 2 as long as the evidence is sufficient under at least one method. *See Campbell v. State*, 426 S.W.3d 780, 786 (Tex. Crim. App. 2014) (holding that, when jury may convict on any one of several methods of committing the same offense and returns a general guilty verdict, it does not matter that the evidence may be insufficient under one or more methods as long as the evidence is sufficient under at least one method). We conclude that the evidence is sufficient under Section 550.021(a)(4).

### 1. Standard of Review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found

[7]The jury charge was consistent with Occil's indictment on Count 2—other than the State's abandonment of its Subsection (a)(1) allegations—and Occil does not claim otherwise.

the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Hammack v. State*,

16

622 S.W.3d 910, 914 (Tex. Crim. App. 2021); *see Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Hammack*, 622 S.W.3d at 914. The law as authorized by the indictment means the statutory elements of the offense as modified by the charging instrument's allegations. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021); *see Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

**2. Analysis**

Under Section 550.021(a)(4), the State was required to prove that Occil was the operator of a vehicle involved in an accident resulting in or likely to result in serious bodily injury, that Occil knew he was in an accident, and that he intentionally or knowingly failed to remain at the scene of the accident until he gave his information or provided reasonable assistance to Ramirez. *See* Tex. Transp. Code Ann. §§ 550.021(a)(4), 550.023.

Occil challenges the sufficiency of the evidence showing that he failed to remain at the scene of the accident. Specifically, he argues that his actions after the

17

accident did not constitute his leaving the scene. And while he concedes that he did not meet the requirements of Section 550.023, he appears to argue that either (1) his being detained by police and subsequently arrested prevented him from doing so or (2) he was not required to do so because emergency personnel arrived on scene to assist Ramirez. We disagree. The statute does not provide an exception for operators who, after initially fleeing the scene of the accident, are returned by force. Nor does it provide an exception if, after the operator flees the scene of the accident without attempting to provide assistance, others intervene to fill the gap left by the operator.

To prove Occil's guilt under Subsection (a)(4), the State introduced the following evidence:

- Video footage from a nearby surveillance camera showed and witnesses testified that when Occil's vehicle struck Ramirez's van, his vehicle began spinning and eventually came to a stop 201.67 feet away from the point of impact, and as soon as his vehicle came to a stop, he got out and began walking or running away;

- Less than thirty seconds after the initial impact, Occil had made it from his vehicle to a church parking lot approximately fifty yards away;

- Virginia Johnson, who at the time of the accident had been sitting in her car in the church parking lot, testified that after she heard the accident and saw debris from it land near her car, she ran towards the scene to help, but Occil had opened the door of his vehicle, had gotten out, and had run away from the scene;

- When asked on cross-examination whether Occil could have been going "to get help," Johnson testified that it was not possible that Occil had been seeking help because he had walked past the entrance of the church—where other people and help could have been found—and had continued walking away from the accident;

18

- Johnson explained that based on Occil's actions, he appeared to have had "no intention on turning around . . . [;] his body was in motion in the opposite direction the whole time";

- Gregory Ditch, another motorist who had witnessed the accident, testified that he had seen people going towards Ramirez's van after the accident but that Occil had not been one of those people; instead, Occil had been going "away from the scene";

- Ditch testified that in his opinion, it had appeared that Occil was "trying to flee the scene";

- Officer Coulter testified that when he arrived on scene—within minutes of the accident—Occil was already two to three hundred feet away and continuing to walk in the opposite direction;

- Officer Coulter believed that Occil had been "trying to flee the scene";

- Officer Coulter testified, and his body-camera footage showed, that he had called out for Occil to stop, that Occil had not complied, and that Officer Coulter had to "chase after" him to get him to stop;

- Officer Coulter testified that when someone flees from a scene, it "[u]sually means they're guilty of something";

- Video footage and photographs taken after the accident showed the direction in which Occil was moving after he got out of his vehicle and began walking away, where he was when Officer Coulter arrived on scene, and where he was when Officer Coulter caught up to him;

- Multiple witnesses testified that they never saw Occil (1) speak to or attempt to exchange information with anyone else at the scene before he walked away from it, (2) call or attempt to call 911, or (3) offer aid to or attempt to help Ramirez—who had been ejected from his van and whose body was lying in the street approximately forty to fifty feet away from his van;

- Video footage showed that Occil never approached Ramirez's van after the accident;

- The records of the 911 calls after the accident indicated that Occil had not called 911; and

19

- The paramedic who treated Occil at the scene of the accident testified that Occil had been able to communicate and provide information and that he had not been cognitively impaired.

This evidence shows that after the accident, Occil did not remain at the scene of the accident but fled as soon as his vehicle stopped spinning, and he made no attempt to give his information or provide reasonable assistance to Ramirez at any time before he fled, before Officer Coulter chased him down, or before medical personnel arrived.

To rebut this evidence, Occil points out that (1) Officer Coulter testified on cross-examination that the scene of the accident "[t]echnically" included the vicinity where debris had landed, and "us[ing] that scenario," Occil was in the vicinity; (2) Occil's vehicle was on fire after the accident, and witnesses acknowledged that his moving away from a burning vehicle was normal; (3) Occil had been injured in the accident, "may have blacked out," and was "confused" and in pain; (4) a paramedic agreed that "fight or flight" is a natural response to pain or a head injury; (5) Occil was detained by police; (6) other people called 911; and (7) both Occil and Ramirez were treated by medical personnel and then taken to the hospital by ambulance. Occil impliedly asks us to re-evaluate the weight and credibility of the evidence and to substitute our judgment for that of the jury, which we will not do. Indeed, the jury heard all this evidence too, and we must presume that the jury resolved any conflicts in favor of its guilty verdict. *Braughton*, 569 S.W.3d at 608; *see Castellon v. State*, No. 01-19-00223-CR, 2020 WL 5525333, at *4 (Tex. App.—Houston [1st Dist.] Sept. 15, 2020, pet. ref'd) (mem. op., not designated for publication) ("[W]e must resolve all

20

inconsistencies in the evidence about whether [appellant] remained on the scene in favor of the jury's guilty verdict."). It was reasonable for the jury to determine from the cumulative force of the evidence that Occil left the scene of the accident without even attempting to give his information or provide reasonable assistance to Ramirez.

When viewed in the light most favorable to the jury's verdict, the evidence shows that Occil failed to remain at the scene of the accident until he complied with the requirements of Section 550.023. *See Williams v. State*, 531 S.W.3d 902, 914 (Tex. App.—Houston [14th Dist.] 2017) (stating that failure-to-stop-and-render-aid offense is complete when defendant leaves scene of accident with knowledge that accident occurred), *aff'd*, 585 S.W.3d 478 (Tex. Crim. App. 2019); *Powers v. State*, No. 12-15-00237-CR, 2017 WL 511223, at *1, *5 (Tex. App.—Tyler Feb. 8, 2017, no pet.) (mem. op., not designated for publication) (upholding failure-to-stop-and-render-aid conviction when appellant left scene of accident before police or emergency medical personnel arrived); *Mabry*, 2014 WL 4463117, at *8 (rejecting appellant's argument that he was still at "scene" of accident when he walked away from point where he crashed his vehicle into another vehicle and sat down in a field "some 140 to 190 yards away," and witnesses testified that he had left scene, had attempted to elude police, and had not attempted to aid driver of other vehicle); *Galvan v. State*, 846 S.W.2d 161, 165 (Tex. App.—Houston [1st Dist.] 1993, no writ) (holding that appellant failed to stop and render aid when he did not remain at accident scene, attempt to offer assistance to driver of other vehicle, or "show that he would have

21

rendered assistance but for the intervention of others" and stating that "[a]s the driver of the vehicle involved in the accident, appellant was the only person with a duty to assist the complainant"); *see also Moore v. State*, 145 S.W.2d 887, 888 (Tex. Crim. App. 1940) (explaining that failure-to-stop-and-render-aid statute requires "a definite cessation of movement [at accident scene] for a sufficient length of time for a person of ordinary powers of observation to fully understand the surroundings of the accident and to possess himself of an accurate knowledge of the results of the accident"); *cf. In re J.G.*, No. 02-12-00023-CV, 2013 WL 105658, at *2 & nn.3–4 (Tex. App.—Fort Worth Jan. 10, 2013, no pet.) (mem. op.) (affirming delinquency finding based on appellant's failure to stop and render aid when he fled accident scene in his vehicle, then hit a light pole, and after that, continued to flee on foot; noting that appellant could not give his information or provide assistance to accident victims only because he did not stop at or return to accident scene; and rejecting appellant's arguments that both his intoxication and the timing of emergency personnel's arrival on scene had prevented him from complying with statute's requirements because he had "managed to" get up and walk away from the scene and did not even attempt to comply before fleeing).

Accordingly, we hold that the evidence is sufficient to support Occil's conviction under Section 550.021(a)(4). We overrule his fourth point.

**C. Alleged Error in the Jury Charge**

The jury charge did not include the complete statutory language of Section 550.021(a)(2). Specifically, it omitted the phrase, "if the vehicle is not stopped at the scene of the accident." Tex. Transp. Code Ann. § 550.021(a)(2) (requiring operator to "immediately return to the scene of the accident if the vehicle is not stopped at the scene of the accident"). Assuming, without deciding, that the omission constitutes error, we conclude that the error did not result in egregious harm.

**1. Standard of Review**

Unpreserved charge error warrants reversal only when the error resulted in egregious harm. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19. The appropriate inquiry for egregious harm is fact- and case-specific. *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013); *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011).

In making an egregious-harm determination, we must consider "the actual degree of harm . . . in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel[,] and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *see generally Gelinas*, 398 S.W.3d at 708–10 (applying *Almanza*). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive

theory, or make a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490 (citing *Almanza*, 686 S.W.2d at 172); *see State v. Ambrose*, 487 S.W.3d 587, 594, 597 (Tex. Crim. App. 2016) (listing as example of valuable right of defendant the right to a fair and impartial jury trial). The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

### 2. Analysis

Occil argues that he was egregiously harmed because the complained-of language "allowed the jury to return a verdict based upon less than what was required by statute." He contends that the evidence shows that his vehicle was stopped at the scene of the accident—it was disabled—so he had no duty to "return to the scene of the [accident] *if his vehicle was not stopped*." In other words, Occil appears to argue that had the jury charge included the omitted language, the jury could not have convicted him of Count 2. We disagree.

The record does not show actual, as opposed to theoretical, harm. *See Almanza*, 686 S.W.2d at 171 (emphasizing that "actual" harm is required). Occil was charged with alternate methods of violating Section 550.021(a)—Subsections (a)(2) and (a)(4)—and both methods were included in the jury charge. The jury returned a general verdict finding Occil guilty of the offense of accident involving serious bodily injury, as alleged in Count 2 of the indictment. As discussed above, the evidence is sufficient under Subsection (a)(4) to support Occil's conviction for Count 2. The jury

was therefore authorized to convict Occil based on his failure to remain at the scene of the accident until he gave his information and provided reasonable assistance to Ramirez, *see* Tex. Transp. Code Ann. § 550.021(a)(4), without reference to any alleged errors in the jury charge regarding Occil's failure to return to the scene of the accident, *see id.* § 550.021(a)(2). *See Mabry*, 2014 WL 4463117, at *7; *see also Huffman*, 267 S.W.3d at 909 (holding that jury charge alleging alternate methods of committing failure to stop and render aid did not violate appellant's right to unanimous verdict). Even Occil concedes that Subsection (a)(4) "governs the issues and facts that the State sought to prove in this case."

We conclude that any error in the trial court's omission of part of Subsection (a)(2)'s statutory language in the jury charge did not deny Occil a fair and impartial trial and was not calculated to injure his rights because the jury could have convicted Occil under an alternate theory of culpability unrelated to the alleged error. *See Mabry*, 2014 WL 4463117, at *7 (reaching same conclusion on similar facts); *see also Huffman*, 267 S.W.3d at 909 (holding that jury did not have to unanimously agree on which alternate method of committing offense of failure to stop and render aid had occurred). Accordingly, we hold that the assumed jury-charge error did not result in egregious harm. We overrule Occil's third point.

## V. Conclusion

Having overruled all of Occil's points, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: March 19, 2026

26